UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| RFF FAMILY PARTNERSHIP, LP, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  Civil Action No. |
| | ) |
| STEVEN A. ROSS individually and | ) |
| in his capacity as Trustee of the | ) |
| BD LENDING TRUST and LINK | ) |
| DEVELOPMENT, LLC | ) |
| | ) |
| Defendants. | ) |

## **COMPLAINT**

## **INTRODUCTION**

1. This is an action by RFF Family Partnership, LP ("RFF"), the current owner of approximately 22 acres of land in Saugus, Massachusetts (the "Property"), seeking both declaratory and monetary relief from Steven Ross, individually ("Ross") and in his capacity as the trustee of the BD Lending Trust ("BD"), and Link Development, LLC ("Link").  RFF claims that a mortgage signed by a now-disbarred attorney, Stuart Sojcher ("Sojcher"), on behalf of Link in favor of BD is void (the "BD Mortgage").  In particular, RFF claims that Sojcher lacked authority to sign the BD Mortgage on behalf of Link and diverted the proceeds of the loan the BD Mortgage was intended to secure for his own benefit.  Although RFF made demand upon BD to discharge the BD Mortgage it refused.  As a result, in June 2011, RFF brought a suit seeking to void the BD Mortgage, which Ross agreed to settle by discharging the mortgage.  After RFF accepted the terms of the settlement agreement and BD reported to this Court that the case had settled, BD claimed it had assigned its mortgage to Link and, therefore, no longer held the

mortgage. RFF successfully moved to enforce the settlement agreement and the Court ordered BD to discharge the mortgage, but BD has refused to do so. Moreover, Link's recording of the assignment of the BD Mortgage, which it has maintained was fraudulent and void, slandered RFF's title. As a result, the Property remains encumbered by the BD Mortgage, Link now demands $1,435,000 to discharge it, and RFF has been forced to file this action to *inter alia* discharge the BD Mortgage. RFF seeks an order from this Court declaring the BD Mortgage void and for monetary damages from Ross, BD and Link.

## JURISDICTION AND VENUE

2.   Pursuant to 28 U.S.C. § 1332, this Court has jurisdiction over this matter as the Plaintiff is a citizen of California, all Defendants are citizens of Massachusetts, and the amount in controversy exceeds $75,000.

3.   Pursuant to 28 U.S.C. § 1391, the District of Massachusetts is the proper venue for this action because all Defendants reside in Massachusetts, the contract which is the subject of this dispute was formed in Massachusetts, and the mortgage at issue is on property located in Massachusetts.

## PARTIES

4.   RFF is a limited partnership formed under the laws of California with a principal place of business of 11661 San Vicente Boulevard, Suite 304, Los Angeles, California.

5.   On information and belief, Ross is the trustee of BD Lending Trust, a trust organized under the laws of Massachusetts. Ross is an attorney and Massachusetts resident and has an address at 83 Speen Street, Natick, Massachusetts.

2

#1844023 104898/7

6.       Link is a Massachusetts limited liability company with a principal place of business of 28 Brooks Park, Unit 12, Medford, MA.  Jeffrey Karll ("Karll") purports to be the manager of Link.

## FACTUAL ALLEGATIONS

7.       In or around 2005, Sojcher, a now disbarred attorney, filed a Certification of Organization with the Commonwealth of Massachusetts to form Link, a single asset entity intended to hold and develop the Property.  A copy of the Certificate of Organization is attached hereto as **Exhibit A**.

8.       The Certificate of Organization identified Essam Al Tamimi ("Tamimi"), as the sole "manager," and authorized only Tamimi to "execute any documents to be filed with the secretary of state" and to "execute, acknowledge, deliver and record on behalf of the LLC any recordable instrument purportedly to affect an interest in real property."

9.       By foreclosure deed dated August 2, 2005, Link received title to the Property for a reported payment of $1.3 million.  A copy of the Foreclosure Deed is attached hereto as **Exhibit B**.

10.      In or around September 2006, Sojcher requested that Ross, a lawyer and hard-money lender, issue a short-term sixty (60) day, $600,000 loan secured by a lien on the Property.

11.      In response to Sojcher's request, Ross approved the loan and formed BD for the specific purpose of lending the $600,000.  A copy of the Declaration of Trust is attached hereto as **Exhibit C**.  The Declaration of Trust identified Robert Wallace ("Wallace"), a then-client of Ross, as trustee.

12. On September 29, 2006, Sojcher forged or falsified and then filed several documents in an attempt to create legal authority for him to act on behalf Link and mortgage the Property. These documents included:

- a 2006 Annual Report for Link which represented that Sojcher was the "new manager" for Link, that he was authorized to sign documents on behalf of Link to be filed with the Secretary of the Commonwealth and was authorized to "execute, acknowledge, deliver and record" instruments purporting to affect an interest in real property. A copy of the 2006 Annual Report is attached hereto as **Exhibit D**;

- a Certificate of Amendment identifying Tamimi as the manager of Link "at the time of its formation" and as the "new manager," but also identifying Sojcher as "successor Manager." A copy of the Certificate of Amendment is attached hereto as **Exhibit E**; and

- Other certificates naming Sojcher as the sole manager of Link and stating that he had the authority to enter into a loan with BD for $600,000. Copies of the Manager's Certificate, Certificate of Manager, and Certificate of Organization are attached hereto as **Exhibit F**.

13. After creating legal authority to act on behalf of Link, Sojcher signed:

- a note in the original principal amount of $600,000;

- a mortgage granting BD a security interest in the Property (previously defined as the "BD Mortgage"); and

- a "Closing Memorandum."

A copy of the BD Mortgage is attached hereto as **Exhibit G**; a copy of the Closing Memorandum is attached hereto as **Exhibit H**.

14. By signing the Closing Memorandum, Sojcher authorized the disbursement of funds to pay debts not owed by Link, including:

- $8,166 to pay off the "Kneeland Mortgage;"

- $3,072.92 for "Row St#1 due 10/25/06;"

- $122,322.96 to pay off "Row St. #3;"

4

#1844023 104898/7

- $1,516.67 for "Unit G payment due 10/4/06";

- $4,083.33 to "Cityscapes payment due 10/21/06";

- $16,000 for "Other condominium fees";

- $60,000 for an "origination fee"; and

- $14,200 for a "legal fee" to Sojcher.

15.  On October 2, 2006, Sojcher recorded the BD Mortgage on both the registered and unregistered parcels of the Property.

16.  On or about October 2, 2006, Karll, Link's current purported manager, heard that Sojcher was "peddling" the Property, confirmed that BD had recorded the BD Mortgage, and subsequently contacted the trustee, Wallace, to challenge the validity of the BD Mortgage.

17.  In response, Wallace contacted Ross, informed Ross that Karll was disputing Sojcher's ability to close the loan, and stated that Sojcher's authority should be "checked on."

18.  On information and belief, Ross knew that Sojcher lacked authority but nevertheless refused to discharge the BD Mortgage and authorized the "funding" of the loan.  On information and belief, by authorizing the loan Ross breached his fiduciary duty to his clients. At least $300,000 of the loan proceeds were diverted to benefit Ross or Ross related entities.

19.  On October 18, 2006, Sojcher and Wallace signed and recorded an amendment to the BD Mortgage, providing that BD would advance Link an additional $100,000, increasing the principal balance of the loan and mortgage to $700,000 (the "Amendment of Mortgage").  A copy of the Amendment of Mortgage is attached hereto as **Exhibit I**.

20.  In or around November 2006, on information and belief, BD attempted to exercise its rights under the terms of the BD Mortgage and commenced foreclosure proceedings on the Property.

5

21.  To prevent foreclosure, on or about December 15, 2006, Link filed a verified complaint in Suffolk Superior Court, captioned <u>Link Development LLC v. Stuart Sojcher, et. al.</u>, (the "Superior Court Action"), seeking *inter alia* to declare that the BD Mortgage was void and that Sojcher was "not authorized to enter into any mortgage on behalf of" Link.

22.  Link claimed that:

- "Sojcher" engaged in a "string of fraudulent actions," including forging or falsifying and then filing several legal documents for the purposes of creating apparent authority to act on behalf of Link, mortgage the Property to BD, and diverting a portion of the equity for the benefit of Sojcher, Ross, and Wallace, among others (Comp. ¶¶ 11 to 15);

- these forged or falsified documents included *inter alia* a mortgage on the Property from Link in favor BD in the principal amount of $700,000 (<u>Id.</u>);

- after these documents were executed and recorded but before any of the funds were extended by BD, Link's representative, Karll, notified Wallace and Ross that Sojcher lacked authority to sign the mortgage on Link's behalf (Comp. ¶¶ 26, 27);

- nevertheless, BD allegedly funded the loan but Link did not receive any loan proceeds (Comp. ¶¶ 28, 50);

- the proceeds from the BD Mortgage were retained by "Ross, Wallace, BD Lending and Sojcher" "for their own benefit" (Comp. ¶ 50); and

- BD received $60,000 in connection with the funding of the fraudulent mortgage, Ross "used proceeds from the BD Lending Mortgage to pay himself in his capacity as the mortgagor" on an unrelated property, and Sojcher received "some portion of the proceeds" (Comp. ¶ 51).

6

A copy of the Complaint is attached hereto as **Exhibit J**.

23.     While the Superior Court Action was pending, on October 15, 2007, Link signed a note in the amount of $1.4 million payable to RFF and a mortgage granting RFF a security interest in the Property (the "RFF Loan").

24.     Link defaulted under the terms of the RFF Loan and RFF subsequently foreclosed.  RFF took title to the Property by foreclosure deed and owns the Property subject to the BD Mortgage.

25.     In or around 2011, RFF filed an action in this Court captioned <u>RFF Family Partnership, LP v. Link Development LLC, et al.</u>, No. 1:11-cv-10968-NMG (the "Federal Action"), seeking *inter alia* a declaration that the BD Mortgage was void.  A trial on the case was scheduled for November 14, 2012.

26.     In June 2012, before the Federal Action was tried, Link and BD settled the Superior Court Action (the "Link Settlement").  Pursuant to the Link Settlement, Link received an initial payment of $450,000, and agreed with BD to use the BD Mortgage, which Link had maintained was void as a result of fraud, to leverage an additional payment from RFF.  To the extent BD was successful in extorting an additional payment from RFF, the Link Settlement obligated BD to pay a portion of the money it received to Link.  A copy of the Link Settlement is attached hereto as **Exhibit K**.  The Link Settlement also provided that:

> [T]he obligations of BD under the [sic] this [sic] Settlement Agreement, including under the Term Note, shall be secured by an assignment of the BD Mortgage, as amended, from BD to Link (the "Assignment"), in the form attached hereto as <u>Exhibit C</u>.  BD shall execute and deliver the Assignment to counsel for Link, to be held in escrow.  If and when BD fulfills its obligations under Paragraph 2 of this Settlement Agreement, counsel for Link shall immediately release the Assignment back to BD.  In the event of a default of any obligations by BD under this Settlement Agreement, Link shall be permitted immediately to remove the Assignment

7

> from escrow and, in its sole discretion to record or take any other necessary and required action to enforce the Assignment or with respect to the BD Mortgage as amended . . . . Further, BD shall not, without seven (7) days prior written notice to Link, execute and deliver or record or permit to be recorded . . . (ii) a discharge of the BD Mortgage, as amended.
>
> \* \* \*
>
> Link acknowledges that BD intends to enforce the BD Note and BD Mortgage, as amended, solely against the Property…

27. Ross continued to maintain that the BD Mortgage was valid and enforceable and ultimately used the BD Mortgage to force a payment from RFF. Specifically, Ross represented that BD would discharge the BD Mortgage for a payment of $140,000 from RFF.

28. In reliance on Ross and BD's representations, RFF agreed to settle the Federal Court Action on those terms (the "Settlement Agreement"), which were confirmed in writing. A copy of the email confirming the terms of the Settlement Agreement is attached hereto **Exhibit L**.

29. On November 14, 2012, RFF and BD both reported to the Court that RFF's claim against BD was settled. In particular, the parties represented:

> Mr. Briansky: We have settled a portion of the claims that were scheduled to be tried today. All the claims against BD, which I believe is Count 1. It's a declaratory judgment count regarding the validity of the BD mortgage.
>
> The Court: Do you want to put on the record the nature of the settlement?
>
> Mr. Briansky: your Honor, the nature – well, certain terms – we've agreed to maintain certain terms of the settlement confidential. Its more Mr. Marano's confidentiality issue and if he want to articulate it—
>
> The Court: Fine. Mr. Marano.
>
> Mr. Marano: I agree with Mr. Briansky in that we have settled Count 1 the declaratory judgment action. I guess for the record

8

what I would state is it is confidential in nature of the terms, by agreement.

The Court:   All right. But in any event, the BD Lending Trust is out of the case, is that right

Mr. Marano:   Yes, yes.

The Court:   And all matters have been resolved to satisfaction of both parties, is that right?

Mr. Briansky:   That's correct your Honor.

Mr. Marano:   Yes, Judge.

A copy of the relevant portion of the transcript is attached as **Exhibit M**.

30. Ross and BD's representation that BD would discharge its mortgage was false.

31. Unbeknownst to RFF, at the time Ross and BD represented that BD would discharge its mortgage, BD had already assigned its mortgage to Link. In particular, on or about May 31, 2012, Ross (on behalf of BD) executed an "Assignment of Mortgage," which purported to transfer of all of BD's rights in the BD Mortgage to Link (the "Assignment"). A copy of the Assignment is attached hereto as **Exhibit N**.

32. Ross and BD failed to disclose this fact to RFF or the Court.

33. Before RFF and BD signed a final settlement agreement, on December 6, 2012, Link recorded the Assignment, despite its prior representations that the BD Mortgage was fraudulent and void.

34. On March 22, 2013, RFF moved to enforce the Settlement Agreement.

35. On June 26, 2013, this Court allowed RFF's motion and "**directed** [BD] to discharge the BD Lending Mortgage." A copy of the Memorandum & Order is attached hereto as **Exhibit O** (emphasis in original).

36. Nevertheless, BD has not discharged the BD Mortgage.

9

37. Notwithstanding Link's prior representations (under oath) that the BD Mortgage was void (as a result of fraud), Link now maintains the mortgage is valid and enforceable, and has made demand for payment from RFF of $1,435,000 to discharge the BD Mortgage. A copy of the email is attached hereto as **Exhibit P**.

38. On December 19, 2013, RFF demanded BD pay Link $1,435,000 to discharge the BD Mortgage. A copy of the email is attached hereto as **Exhibit Q**.

39. Due to BD's failure to comply with the Settlement Agreement, Link's recording of the Assignment, and BD and Link's failure to discharge the BD Mortgage, the Property is encumbered by the BD Mortgage, RFF has been unable to sell the Property, and has incurred damages, including *inter alia* carrying costs (such as property taxes).

40   RFF has also incurred attorneys' fees and costs in enforcing the Settlement Agreement and filing this action to *inter alia* discharge the BD Mortgage.

## CAUSES OF ACTION

### COUNT I – DECLARATORY JUDGMENT
(Against Steven Ross as trustee of BD Lending Trust and Link Development LLC)

41. RFF incorporates paragraphs 1 to 40 of the Complaint as if fully set forth herein.

42. An actual controversy exists between RFF and BD and Link, with respect to the validity of the BD Mortgage.

43. RFF is entitled to a declaration that the BD Mortgage is void.

### COUNT II – BREACH OF CONTRACT
(Against Steven Ross as trustee of BD Lending Trust)

44. RFF incorporates paragraphs 1 to 43 of the Complaint as if fully set forth herein.

45. RFF and BD entered into a settlement agreement on November 13, 2012 pursuant to which BD was required to discharge the BD Mortgage.

10

46. BD breached the Settlement Agreement by *inter alia* failing to discharge the BD Mortgage.

47. As a result of BD's breach of the Settlement Agreement, RFF has incurred, and continues to incur, damages.

## COUNT III – NEGLIGENT AND/OR INTENTIONAL MISREPRESENATION
(Against Steven Ross individually and as the trustee of BD Lending Trust)

48. RFF incorporates paragraphs 1 to 47 of the Complaint as if fully set forth herein.

49. To induce RFF to agree to the terms of the Settlement Agreement and forgo trial, Ross and BD represented that BD would discharge the BD Mortgage in exchange for a payment of $140,000.

50. Ross and BD intended RFF to rely upon this representation.

51. RFF reasonably relied to its detriment on this representation.

52. Ross and BD's representation was false.

53. As a result of these false representations, RFF has incurred and continues to incur damages.

## COUNT IV – SLANDER OF TITLE
(Against Steven Ross as trustee of BD Lending Trust and Link Development LLC)

54. RFF incorporates paragraphs 1 to 53 of the Complaint as if fully set forth herein.

55. On or about October 2, 2006, BD caused the BD Mortgage to be recorded on the Property.

56. On or about December 6, 2012, Link recorded the Assignment.

57. The BD Mortgage and Assignment contain false statements in disparagement of RFF's title to the Property.

11

#1844023 104898/7

58. At the time BD caused the BD Mortgage to be recorded, it knew that the statements contained in the BD Mortgage were false or acted in reckless disregard of the truth or falsity of the statements contained therein.

59. At the time Link recorded the Assignment, it knew that the statements contained in the BD Mortgage and Assignment were false or acted in reckless disregard of the truth or falsity of the statements contained therein.  In fact, Link has claimed that the BD Mortgage was not authorized by Link, and was fraudulent and void.

60. In recording the Assignment, Link acted with malice with the intent to injure RFF or knew or should have known that recording the Assignment would result in pecuniary loss to RFF.

61. Despite the fact that the BD Mortgage is void and unenforceable, BD and Link have failed to discharge the BD Mortgage, deliberately allowing the record to reflect that they have (or had) lien rights.

62. In failing to discharge the BD Mortgage, BD and Link acted with malice with the intent to injure RFF or knew or should have known that the failure to discharge the BD Mortgage would result in pecuniary loss to RFF.  Indeed, BD and Link have used the BD Mortgage as leverage to obtain money from RFF.

63. As a result of BD and Link's slander of title, RFF has incurred and continues to incur damages.

**COUNT V – VIOLATION OF M.G.L. C. 93A, §§ 2, 11**
(Against Steven Ross individually and as the trustee of BD Lending Trust)

64. RFF incorporates paragraphs 1 to 63 of the Complaint as if fully set forth herein.

65. At all material times relevant hereto, Ross and BD were engaged in the conduct of trade or commerce as defined in M.G.L. c. 93A, §§ 2 and 11.

12

66. Ross and BD have committed unfair and deceptive acts and practices declared unlawful under the provisions of M.G.L. c. 93A, §§ 2 and 11 and the interpretive regulations and case law related thereto. The actions of Ross and BD which constitute violations of M.G.L. c. 93A, §§ 2, 11 include, without limitation:

- intentionally recording a mortgage they knew was unauthorized and did not benefit Link;

- refusing to discharge the BD Mortgage and using it as leverage to obtain money from RFF;

- falsely representing that BD would discharge the BD Mortgage to induce RFF to agree to the terms of the Settlement Agreement and forgo trial; and

- intentionally omitting the fact that BD had assigned its mortgage to Link in May 2012.

67. Ross and BD's unfair and deceptive conduct occurred primarily and substantially in Massachusetts.

68. As a result of Ross and BD's unfair and deceptive conduct, RFF has incurred and continues to incur damages.

### RELIEF REQUESTED

WHEREFORE, for the above reasons, RFF requests the Court:

(a) Pursuant to Count I, enter an order declaring the BD Mortgage void and unenforceable;

(b) Pursuant to Counts II, III, and IV enter judgment against Ross, BD, and Link in favor of RFF for the amount of its damages, including the cost to discharge the BD Mortgage;

13

(c) Pursuant to Count V, enter judgment against Ross and BD in an amount no less than double and no more than treble RFF's actual damages, together with attorneys' fees and costs;

(d) award RFF its reasonable costs and expenses incurred in this action including, without limitation, its attorneys' fees; and

(e) award such other and further relief as the Court deems just and proper.

**PLAINTIFF DEMANDS A JURY ON ALL CLAIMS SO TRIABLE.**

> Plaintiff
> RFF FAMILY PARTNERSHIP, L.P.
>
> By its attorneys,
>
> */s/ Richard E. Briansky*
> Richard E. Briansky (BBO# 632709)
> Amy B. Hackett (BBO# 676345)
> PRINCE LOBEL TYE LLP
> 100 Cambridge Street, Suite 2200
> Boston, MA  02114
> Phone: (617) 456-8000
> Fax:    (617) 456-8100
> rbriansky@princelobel.com
> ahackett@princelobel.com

Dated:  January 10, 2014